Jones, C. J.,
after stating the facts of the case, delivered the opinion of the court, as follows :
The objection taken by the defendant to a recovery in this cause, is, that the action is by one partner against another, in a partnership transaction, and therefore is not sustainable. The plaintiff insists that the letter of June 26th,1812, from the plaintiff to the defendant, and his acquiescence in its contents, were evidence of the mutual consent and agreement of the parties to terminate and close the joint concern, or if the contract was left open, and operations under it were merely suspended, the letter was conclusive evidence of the division by the defendant himself of the 58 shares of United States Bank stock, and a severance of the joint interest therein, and an allotment of the 29 shares to the plaintiff for his separate share, and that the plaintiff, by his silence, acquiesed in the arrangement and consented to the partition. It is also insisted, that the defendant by this operation became the trustee for the plaintiff of the 29 shares so allotted to him, but retained the same as security for the balance due from *186 the plaintiff, and has received the dividends under them, insatis faction of that balance. In corroboration of this idea, it was spown Py extracts from the books of the trustees of the stockholders of the bank, that Fowler, the defendant, in May, 1812, had standing in his name 44 shares; and that on 28th September a separate power of attorney was given to receipt for twenty-nine of these shares; thus indicating, that a division had been made of the stock, and that from that time, those 29 shares were kept separate from the rest of the stock, and that it continued in his hands unsold, while the residue appears to have been u holly disposed of by him. These facts would seem to manifest an intention, on his part, to sever the common interest in the slock, and to vest in'the plaintiff exclusively "the 29 shares mentioned in the letter of June 26th, 1812, as being bis share of the stock and he entitled to receive the residue of the dividends thereon.
The" defendant denies that these acts amount to a severance of the joint interest, and insists upon the principle, that there must be a liquidated settlement of the co-partnership accounts, and a balance struck, or a balance agreed upon by the partners to entitle the one to sue the other at law; he insists, that no such liquidation and settlement appear in this case, and he puts in evidence two letters of the plaintiff, of as late a date as 1825, to show that he then claimed an account upon the principles of a continuance of the partnership. I do not attach much importance to these letters. , They admit, I think, of the explanation given of them by the plaintiff’s counsel, and at any rate, they speak after too long an interval of time to be heard with any effect; and though used against the writer, yet I think the claim they prefer, which by the last letter appears to have been repelled, was one which could not be sustained. I cannot consider those letters as any evidence of the continuance of the joint concern ; and the conduct of the parties shows that they considered it as terminating in 1812. The two hundred shares of stock in the bank of America, subscribed for by the plaintiff, were never considered or treated as joint stock. It was managed. by the plaintiff solely. It was nursed by his care ; and finally wound up, the stock sold out, "and the operation closed by his agency alone, and without any con *187 sultation or advice of the defendant. The subscription was never made known to him, and he was an utter stranger to it, and to the disposition made of it, until 1825, two years after it was finally closed.
But the difficulty the plaintiff has, in my judgment to encounter is, that his own testimony fails to prove such separation of his joint interest with the defendant in the United States Bank shares, as to enable him to maintain an action at law against the defenddant for the avails of the 29 shares, as his exclusive property. If hie long silence and passive conduct are not evidence of an abandonment of the contract, his remedy in equity for an account is clear. But in an action of assumpsit at law, he must show more than a right to an account; he must show an actual account, or a division of the stock, or an adjustment and promise to pay. Does the testimony in this case establish either? The whole of the joint stock was purchased by the defendant, and the purchase money advanced by him. The times made it necessary, or highly expedient, in his judgment, to terminate the connection, or, at least; to suspend its operation. He knew of no purchases of stockin the Bank of America,and under these impressions and with these lights, the letter pf June 26th, was written. It transmitted an account of the defendant’s operation on joint account tip to the period of that statement, and the amount then due to the defendant for the plaintiff’s half of the defendant’s advances to effect the purchases, after crediting the 70 per cent, received in dividends. This sum, as no further purchases were intended to be made, the plaintiff was bound to pay for his share of the stock, and he would, of course, be entitled to the residue of the dividends on 29 shares, or one half of the stock, This may have been virtually a discontinuance or dissolution of the co-partnership, but it was not an adjustment of the partnership concerns.
In Casey and Lawrence v. Brush, [2 Caines’ R. 293.] the court held, that to entitle the plaintiff to recover in an action for the balance of an account growing out of a partnership dealing or transaction, there must be evidence of an express promise to pay the balance.
*188 The case of Wetmore v. Baker, [9 John. R. 307.] was decided on the ground that there was no such partnership between the parties as to obstruct the action.
In Murray v. Bogert & Kneeland, [14 John. R. 318.] the plaintiff, and defendants and others had been jointly concerned in shipments and adventures which had all terminated, and been closed. The supercargo of one of the vessels sued the píaintiff and three others, for advances made by him, and expenses incurred on their account, and recovered a judgment against them, which they were compelled to pay, arid the plaintiff then brought a suit against the defendants to recover the proportion due from them of what had been paid by the plaintiff. It was objected, that the demand grew out of a partnership transaction, and was not recoverable in an action at law; and the court held, that there was nothing in the case showing a settlement of the co-partnership accounts, and balance struck, and a promise by the defendants to pay, so as to enable the plaintiff to sustain the action.
In Halsted v. Wiggins, [17 John. Rep. 80.] the court ruled the objection, that the demand arose out. of partnership concerns to be conclusive, unless there had been a liquidation of the demand. In this casé there has been no liquidation or settlement, nor any account stated between the parties; and unless the ground is tenable, that the joint interest in the stock was severed, and the share of each party allotted and assigned to him in severalty, the plaintiff must fail in his suit.
The features of the case which have the appearance of an actual division of the stock, are the advice to the plaintiff that he would be. entitled to receive the future dividends on 29 shares, and the fact of the separation of that number of shares from the whole quantity, and keeping them in a distinct parcel. Rut these were the acts of the defendant solely. He could not sever the joint interest in the 58 shares, so as to vest a separate property in himself in the shares taken by him. Suppose the portion of the stockreserved for himself had been sold by him, and the price of stock had afterwards fallen, would he not be accountable for the plaintiff’s share of what was sold 1 the apportionment could not bind *189 the plaintiff, and the only purpose of the separation of the 29 shares from the residue, which could be useful, was the precaution of always keeping that quantity ready for the plaintiff, in case he should accede to the proposals of the letter of the 26th of June, 1812, and come to a settlement with the defendant, pay up the balance due from him, and take his part of the joint stock.
But it is said, that by his silence he acquiesced in these proposals, and must be considered as acceding to the severance of the stock, whereby the defendant became his trustee of the 29 shares set apart for him.
He received that letter, and did not answer it. But did he thereby agree to the defendant’s terms of settlement 1 Those terms were, that the plaintiff should forthwith pay the balance due from him, and make a final settlement of the joint concern.
The defendant presses him for payment, and invites him'to a settlement ; but there were acts yet to be done; neither of which was done, nor was any step taken by the plaintiff for the purpose of informing the defendant of his intention to accede to the arrangement, and perform his part of it. The allotment of the 29 shares to him, if such allotment can be considered as made, was provisional, and to take effect on his compliance with the terms of settlement, and finally winding up the concern. This he never did do. Could he then lie by, and by his silence accept or affirm the terms of the .'arrangements proposed by the defendant, which were favourable to him, and leave those unperformed which were inconvenient or unfavourable to him ? could he leave unpaid the balance he owed, and keep aloof from the final settlement to which he was pressed, and by which he would entitle himself to the shares, and yet insist on the severance of the shares as absolute, and charge the defendant against his will as trustee of those shares for him, and impose on that partner the duty of receiving the dividends, and attending to the concerns which the ownership of those shares imposed, without compensation 1 In my judgment he was bound to answer fully the terms of that letter, or he could claim no benefit from any part of it. But we may ascertain the effect of his letter by another test: Could the defendant have sued the plaintiff for the balance stated in that letter to be due to him from *190 the plaintiff? By the contract the defendant had a right to charge interest upon his advances, but he could not call for payment of the principal, until the joint operation was wound up, and the profit and loss account was settled unless the joint interest was severed and the account settled and stated between them. Then, if he had sued for that balance, would not the answer have been, that he must first exhaust the joint funds, and could claim the deficiency and balance only of his advances and interest, which the avails of those funds failed to reimburse and satisfy ? Would it be any answer to this defence, that the defendant, had severed the joint interest by his own act and set apart the plaintiff’s portion of stock for him ? The plaintiff could not be concluded by that act, unless he affirmed it, and accepted the stock; his silence could not amount to an acceptance ; he was entitled to stand upon his rights ás they were; and leave the defendant to wind up the joint concern, which was under his charge for the joint benefit. In taking that stand, he secured himself from the call of the defendant for his proportion of the advances, and remained liable for the moiety of the final balance only, if there should be any. I interpret his silence to mean,that such was the course he determined to take, and the result was, what if well advised, he knew it must be. The defendant could not insist upon payment; the only obligation the defendant was under to him, resulted from the contract; and by that contract he was not bound to pay the advance.
The whole concern is now closed, and the joint operation has resulted in a gain. The moiety of this gain belongs to the plaintiff. But it is the fruit of a joint or co-partnership operation, and an action at law will not lie by the plaintiff against his former partner for it. There must, therefore, be a judgment of non-suit.

Judgment of non-suit.

[Ogden and Huggins, attys. for plff. P. A. Jay, atty. for deft.]