BLOSS v. CHITTENDEN, administrator, etc.

*Partnership — dissolution — agreements between partners — construction of — final accounting — express promise to pay.*

In 1859, plaintiff and defendant's intestate each owned a bank in Wisconsin ; plaintiff the C. bank, and the other the M. bank. They formed a copartnership, each contributing his bank, and together they contributed a bank known as the L. bank, and each contributed some money. The partnership thus formed continued until 1861, when it was dissolved. During the time the three banks continued to do business as such, and had transactions with each other, as though no partnership existed between the owners. At the time of the dissolution the books of the banks showed that the M. bank was indebted to the C. bank $1,000, and that the L. bank was indebted to it $3,000. Upon dissolution, plaintiff transferred to his partners all his interest in the M. and L. banks, and his partner transferred to him all interest in the C. bank. The partners agreed in writing that the M. and L. banks should pay plaintiff the $3,000 due the C. bank, as soon as they conveniently could, with interest at the rate of 12 per cent ; and defendant's intestate pledged "his honor to pay the balance" as soon as it could be done without pressing the banks.

In an action upon this agreement *held,* that the indebtedness, if any, was not in favor of plaintiff against the two banks as such, but against the intestate, arising out of partnership transactions ; that there was not shown to have been a final accounting between the partners, or an express promise on the part of the intestate to pay, and that plaintiff could not recover.

The rule in this State is well settled, that one partner cannot recover at law against another, except after a final accounting, balance struck, and express promise to pay.

MOTION for a judgment upon a verdict for plaintiff, directed by the court, subject to the opinion of the court at general term. The facts appear in the opinion.

*W. I. Butler,* for plaintiff.

*S. Chittenden,* for defendant.

BARRETT, J. This is a motion by the plaintiff for judgment upon a verdict directed at the circuit, subject to the opinion of the court at general term.

The facts are peculiar and must be stated somewhat fully, in view of the double aspect in which it is sought to charge the defendant, to appreciate the conclusions at which we have arrived.

In the year 1859, Bloss, the plaintiff, was a banker doing business at Beaver Dam, in the State of Wisconsin. At the same time, Huntington, the defendant's testator, was also a banker doing business in the same State. Each controlled and indeed claimed the actual ownership of a bank — Bloss, the City Bank of Beaver Dam, and Huntington, the Mercantile Bank of Lodi, while the two claimed the joint ownership of the Laborer's Bank. On the 7th of May, 1869, Bloss and Huntington formed a partnership in the banking business, Bloss contributing " as stock " (so the articles read) the City Bank, Huntington contributing the Mercantile Bank, and the two contributing the Laborers' Bank. Some money was also contributed by each of the parties. These banks were formally incorporated under the banking laws of the State of Wisconsin. That is, a certificate of incorporation was signed and acknowledged. But, although the stockholders are indicated on the face of the certificate, yet no stock was ever in fact issued by either the Mercantile or Laborers' Bank, while all the stock of the City Bank was owned by Bloss. In fact, all the banks were absolutely controlled and managed by and treated as the private property of the persons signing the certificate or their transferees. Thus it was practically the case of individuals putting on a corporate character, to enable them to issue currency for their own private purposes. The partnership of Bloss & Huntington continued until 1861, when it was dissolved by mutual consent. During the existence of the partnership, the banks outwardly preserved their corporate individuality. Separate books were kept by each " institution," and their dealings, as between themselves, were recorded quite as though no partnership had existed. At the time of the dissolution, the Mercantile Bank, as between itself and the City Bank, was nominally indebted to the latter in about the sum of $1,000. There was also a similar book-keeping indebtedness of about $2,000 on the part of the Laborers Bank.

Upon the dissolution Bloss transferred to Huntington all his interest in the Mercantile and Laborers' banks, and Huntington

transferred to Bloss all his interest in the City Bank. An agreement was then executed reciting the fact that Huntington was then the owner of the Mercantile and Laborers' Banks, and that these banks were indebted to Bloss, then owner of the City Bank, in about $1,000 and $2,000, respectively, "as it doth appear on the books of said City Bank of Beaver Dam." Following this recital was an agreement upon Bloss' part " to hold" the debts thus admitted until the Mercantile and Laborers' Banks could conveniently pay them, upon condition of the payment of interest at the rate of twelve per cent per annum; and Huntington pledged "his honor to pay the said balance due, as soon as it can possibly be done, without distressing the said banks."

Upon this agreement the plaintiff sues, and, in his complaint, he claims to recover upon two grounds: First. Pleading the partnership, that the admitted indebtedness was the result of a final accounting between Bloss and Huntington, upon which the said balances of $1,000 and $2,000 were found to be due to Bloss by Huntington, and were thereupon assumed by the latter. Second. And quite independent of the partnership, that Bloss, by force of the recital in the argument, became a creditor of the two banks to the extent of $3,000, and that Huntington, as their admitted owner, was liable to him as such creditor. This second position is clearly untenable upon the plaintiff's own showing, for he testified that the indebtedness recited in the agreement " arose out of the partnership transactions." It seems to us that this piece of evidence disposes of all the questions in the case, so elaborately discussed upon the briefs, with respect to the *status* of such banks and the liabilities of the owners thereof, and of the stockholders therein under the laws of Wisconsin. Besides, the banks in question were, to all intents and purposes, mere agencies of Bloss & Huntington, and their transactions were but a part of the partnership business. As a matter of fact, therefore, the debts recited in the agreement were not due from either bank to the other, but were simply incidental balances having no significance at all as between the banks themselves, and none even as between Bloss & Huntington until transferred to the regular partnership books. Thus the Mercantile and Laborer's Banks, as referred to in the agreement, were but other names for Huntington, and the City Bank was but another name for Bloss. It is quite plain, then, that the plaintiff cannot be treated as a creditor of a moneyed corporation seeking redress as against the stockholders or

" owners " of the institution, and that the case must rest, as, indeed, the learned counsel for the plaintiff almost conceded in his oral argument upon the first ground, viz., that the recital in the agreement is an admission by Huntington of indebtedness to Bloss, resulting from the partnership transactions. Upon the trial it was claimed by the defendant that Huntington's pledge of his honor was not a promise on which he could be held, and, further, that if it were, the promise was void for usury by reason of Bloss' covenant to forbear upon condition of the payment of twelve per cent per annum, but ten per cent per annum being the lawful rate of interest in Wisconsin, at that time.

The plaintiff appears to have conceded the latter point, and, to avoid it, withdrew the agreement so far as it contained a promise or pledge of honor, and rested solely upon the recital of indebtedness. Coupling that recital with the oral proof that it had reference to the partnership transactions, he rested. The difficulty here was that he entirely failed to show any full or final accounting, or any balance struck between the partners. There is nothing upon the face of the recital to indicate any such full or final accounting or any final balance struck. On the contrary, it appears to have been but partial, and to have had reference only to such transactions as grew out of the relations of the banks in their dealing with each other.

But apart from that there was no proof of an express promise to pay. The rule in this State is well settled that one partner cannot recover at law against another except after a final accounting, balance struck, and *express promise to pay. Casey* v. *Brush,* 2 Cai. 294; *Westerlo* v. *Evertson,* 1 Wend. 532 ; *Halstead* v. *Schmelze,* 17 Johns. 80.

Nothing of the kind is pretended here. Indeed, the only expression in the agreement tending in the slightest degree to establish such a promise was, as has been shown, withdrawn from the case to avoid the objection that it was tainted with usury.

In every aspect of the case, therefore, the court is of opinion that the defendant is entitled to judgment with costs.

INGRAHAM, P. J., and BRADY, J., concurred.

*Judgment accordingly.*